Case number 18-1736, James Benjamin et al. v. John Stemple et al. Argument not to exceed 15 minutes per side. Mr. Ellison, you may proceed for the appellant. Good morning. May it please the Court, Philip Ellison, I'd like to reserve four minutes for rebuttal. Your Honors, the case before you today involves the Constitutional Conditions Doctrine, which is essentially, from my count of the case law from this circuit, consists of 11 total cases in its entire history. So I think we're kind of on what we can charitably call a fresh slate going forward in this particular area of law. That being said, however, the case is actually fairly simple. There is an ordinance. The ordinance requires vacant properties to register with the City of Saginaw. We take no umbrage with that. We take no objection to that. What we take objection to is on the bottom of the form, to require to get that registration, it requires the waiver in our position of Fourth Amendment protections. So, you know, if I had been in your shoes, your client's shoes, when presented with this, I really could imagine having every single anxiety you've laid out. But it seems like you can't take yes for an answer. They've responded by saying everything the Fourth Amendment would require, they will do. However, though, so, I mean, I'm struggling with what's left, what's problematic that's still on the table. I could see at the beginning of the case all these concerns, but at this point after the briefing, I feel like they've said, you get your hearing officer. We don't just get to go on the property because someone says it's dangerous. We have to show it's dangerous. You get notice. You get a hearing. It's an independent person that makes the finding. It seems like an awful lot of pretty helpful concessions to your client. I will say it did move the ball forward differently than when we first started because, of course, none of this of what they've promised to do, which I have called a pie crust promise, actually appears in the actual ordinance itself. It's something that they have taken as a position in federal court. And the problem, though, is that concession would only apply to my particular client right now as a pre-certified class going forward. Well, if you have a court decision construing it to mean this, that's pretty useful. I think it would be very useful. The problem here is... Let's say you get that. Let's say you get a court decision that says their construction is the appropriate construction. I'm not trying to say who wins or loses. I'm trying to ask what's left that gives you pause. What's left that gives me pause is that let's assume for the sake of argument that the chief inspector says, I find that this particular place is dangerous. After notice and a hearing. And then they have a notice. They have a hearing. They get all done at that point. They show up at the front door, which in Jardines versus Florida, law enforcement officers, whoever, can walk to the front door, no problem, and says, we'd like to start taking care of this problem right now. We'd like to do an inspection on this particular inspection of this process, this dangerous condition. And my client says, no, I don't want you. You do not have a warrant to come onto my particular property. If you're worried about that, you have to explain why the Fourth Amendment doesn't allow that. The Fourth Amendment does allow that very thing. The proper finding of dangerousness to go on the property without a warrant to alleviate the dangerousness. That's the point. That's CARMARA. CARMARA is what actually provides for the ability to require inspectors to go in and get a warrant before they come in. Now, the problem that I have, and I want to finish your first question there, is where's the problem here, given these concessions? The problem that exists is, say we get to the end and the hearing officer says, yes, there's a dangerous condition. There is nothing, and that's what I pointed out in the reconsideration. There is nothing, literally nothing, in any of these ordinances that authorizes any sort of subpoena or warrant or authorization document to allow the city inspector or their agents to go into the actual premises to do anything. Why would you need a warrant if there's no Fourth Amendment right? There is a Fourth Amendment right, though. That's CARMARA. And that's the point I was just making. The home is sacrosanct, right? Before we allow government agents to come in and start doing things to our property or to do an inspection of our property. By definition, this isn't your client's home because these are unimproved properties or unoccupied dwellings. They're maintained houses that they own or their trust owns in that respect that they can move into. But it's not their residence. It's not their primary residence at that particular time. Now, it could very easily thereafter become, but property itself has been very well protected. In fact, it's one of the highest orders. Now, maybe it's not the highest, highest of your main principle, if you want to call it your castle, going forward. But it's certainly the individual client's home and individual properties that they own. The problem here is in CAMARA, which is also, if we look to C, SCE case, as well as Donovan, which extended it to. . . So, I'm still trying to make sure I get the problem that still exists. It's one, as I understand it. That they can come to the door after this finding, show the finding, and say, let me in. And that, to you, that's problem one. Are there any other problems? The second problem is I don't think that the hearing itself fulfills Patel. Okay. What's wrong with the hearing? Okay. What's wrong with the hearing is that Patel is. . . Patel, of course, was the hotel registry case, right? Cop shows up, wants to do an inspection of the hotel registry as opposed to inspection of a home. We want you to. . . The Supreme Court said that in order to have, to allow for that particular inspection in that case, you have to have some sort of mechanism in place that allows for an administrative subpoena, a warrant, something of that nature, so that officers themselves aren't the ones making the judgment call about whether or not they're transgressing the Fourth Amendment. I would point to this case. . . Here, the hearing officer is not an employee. So, I can't figure out. . . I know Patel, and I know the statute, so I don't know what. . . What are you telling me that Patel requires that this doesn't do, given their concessions? Patel requires that there be a well-defined. . . If you're not going to require a warrant, and you're going to have an administrative system as an alternative, it has to be. . . There's the three factors of Patel, which has to be narrowly defined, it has to be reasonable in scope. . . When are they failing? All of them. All of them. Because what. . . Look at the. . . Look at the. . . The UPO. What does it authorize. . . What does the hearing officer authorize the inspector to do after there's been a finding that the property's been deemed dangerous? Wait, you're coming back to your first point. Exactly right. Exactly. Well, that just means there's one problem, and the problem is what happens after a dangerousness finding, and that they can go right on the property. In your view, that violates Camara. That's your. . . That's. . . That's the essence of it. Excuse me. Yes, that is true. That is true. Tell me why it violates Camara, since that's the heart of the case, because I thought the whole point of Camara, that's the black letter principle, was the administrative search doctrine applies here, because there's a dangerousness problem, which includes not complying with building codes, therefore you don't need the warrant. So what am I missing? Camara, what I understand Camara to stand for is that when an inspector wants to come onto a particular piece of property, they can't just show up and say, we're here to do an inspection, let us in. You have to have some sort of authorization from a neutral detached arbiter in that respect, a magistrate of some sort. Or a hearing officer. Or a hearing officer. The problem here is that the city points to the dangerous building ordinance officer as the person authorizing their entry. Where in the dangerous building ordinance does it authorize anyone, the chief inspector or otherwise, to enter the premises? There's no warrant that's issued. There's no administrative subpoena that's issued. There's no standard that allows for them to go forward. And again, I would point to, and as I pointed out in my briefing, the relative standard of what constitutes dangerous under the dangerous building ordinance in Saginaw is wide and vast. As much as even having an open window on a vacant property. So the problem here is that it allows, if you don't have that standard that's in place that Patel requires, and you allow a hearing officer to say, we find that it's dangerous over here, but we're not actually authorizing them to enter the premises, you have an officer of the government coming in without a warrant and without third party control over an administrative. I just have to reread Camara because the way I was thinking about it was, you know, you don't need any of these things. If a building is burning, you call the fire department, they race and they fix the problem. If you have a felon who's, you know, kidnapped somebody and it's an emergency, you tell the police, they just go. And I thought Camara just said, if you go through these procedures, eventually laid out in Patel, you were in the same boat as the officer going after to get the kidnapped woman or man, or the fire chief going into the burning building. I thought they were the same. You're telling me they're not? They're not. I'll read. I would encourage you because, for example, the fire, for example, you don't need, there's exigent circumstances if there's a fire. That's Michigan versus Tyler, for example. You can enter the premises to put, firefighters don't need a warrant to go put out a fire, okay? Here, though, is that we have a finding of what the ordinance deems as dangerous for building purposes, right? Now, whether or not an officer of the government can come in and then do an inspection and take action on that property is subject to Fourth Amendment protections. And it has to be an independent, somebody independent to authors. Now, I will concede today that if the dangerous building ordinance authorized the hearing officer to issue some sort of administrative subpoena and had a regime as to here's what you can do during these hours and with various different protections that exist, this would be a different case. I don't think I'd be before you. The problem is, and I come back to where I started from, the dangerous building ordinance does not authorize anything for the hearing officer to issue a subpoena of any sort. Simply all they're there to determine is whether or not the building is dangerous. End of hearing. What's your subpoena? What do you imagine there? What do you mean by that? Well, for example, Patel, for example, Patel says you don't have to have a warrant, right? You don't have to run to a judge. There could be an alternate. Just tell me, don't use Patel. How would you use a subpoena with this code, with this regime? Tell me what the document says, to whom it's delivered, what happens? In this regime right now, there's none of that. None of that exists. The way you want it to? Oh, how I'd want it to? I would imagine something where we have, for example, in Michigan, we have a district court, which is a lower-level general, a more narrow, low-level court that issues these kinds of warrants for police officers. They would go in and say, we believe this— When you say subpoena, you mean warrant. Okay. Okay. That would be like that. Or if the city created some sort of parallel system where the person that sits rather than a judge was a hearing officer that says here is the same criteria that a judge would use but a hearing officer could do it, I think that would be acceptable. We don't have either of that here available to us. All right, great. Thank you. Good morning, judges. May it please the Court, Robert Jordan here on behalf of the defendants and appellees in this case. Judge Sutton, I think you addressed a lot of the points. Let's talk about Camara. I mean, he agrees. If you can show Camara and other Fourth Amendment administrative search cases allow this, it seems to me we know what we need to know. Well, Your Honor, I mean, one of the things we're talking about is the fact that this doesn't consent to a search. You know, there's no consent to a search. What it consents to is the fact that if the dangerous building ordinance applies and we go through that process, then that's what we're looking at. It doesn't put—if the hearing officer makes a decision, it doesn't put a city inspector on the person's door the next day. The hearing officer issues that decision to the owner. The owner then has the time to be able to make those repairs themselves. By the time that the city inspector gets there, this has gone through three more processes, and including one where the owner has the ability to take this for a judicial determination. But this is the fact that these owners are not cleaning up their properties and getting to the point where they're supposed to abide by these regulations. Absolutely the city inspector at that point goes in. The DBO does specifically talk about the city inspector being able to do the necessary maintenance and requirements to be able to get the place up to the standards at that point based on those findings. And then it gets reimbursed from the owner because they failed to do what they were supposed to do in the first place. What does this waiver actually waive? Nothing, Your Honor. What it is is it allows us a mechanism so that these people understand the circumstance they're in. Judge Larson, you pointed out these are unoccupied properties. These aren't even like income properties where there's a tenant or something renting it. It's specifically these situations. The city of Saginaw deals with these situations all the time. We have a massive bank of unoccupied properties that are dilapidated, and the city is trying to do its best to be able to maintain them. But, I mean, really what we're talking about here is that they basically agree that they'll abide by the DBO and the findings of the independent hearing officer at that point. It really isn't doing any work. They have to abide by the DBO anyway. It's just redundant in your view. I wouldn't say it's redundant because it incorporates the UPO requirement with respect because it comes from the UPO, the Unoccupied Property Ordinance. But what it does is it – I guess actually the reverse. What it does is that's how we incorporate the DBO into those regulations for the person to understand, I agree to abide by these regulations. Any other questions, Your Honor? I have none. Thank you very much. Thank you. I would just briefly encourage – He didn't give you too many openings, did he? What's that? He didn't give you too many openings? No, he did not. Normally it's me, I'm trying to fish him for some bait, and normally I'm coming up a little bit dry here. But I guess I would point out, I would point this court to two cases and ask you, in addition to Kamara, now that I had some time to sit down and think about it, I would appoint this court to Peters, Bourgeois versus Peters, which I cite in my case, or in my brief. That's an 11th Circuit case, which deals with Fourth Amendment, as well as the LeBron case, which is also an 11th Circuit case. 11th Circuit has been very active in this area of law. Both of those deal with Fourth Amendment concerns and the Unconstitutional Conditions Doctrine. So I would point to those. Bourgeois and LeBron. Bourgeois and LeBron, and they're both cited in my brief, in my main topside brief. Those, I think, are extremely important, given the issue with... Now, I would encourage you to do two things, based on today's argument. It would be, one, please go back and read Kamara. I sat down and thought about it. I think we're misunderstanding what the scope and intent of Kamara is. But also, check out my motion for reconsideration that was filed by me after the judgment that was entered, which deals with this very issue that you're talking about. Because the problem that exists is we're assuming, and I think wrongfully, if I can leave no other thought going forward right here, I think we're assuming wrongfully that a determination under the Dangerous Building Ordinance, which Judge Larson, you point out, they've got to abide by it anyways, is whether a finding of dangerousness automatically, for an ordinance purpose, automatically allows an agent of the government to invade the property. That's the bottom line right there. There is no case that I can find that supports that the government is waived from its Fourth Amendment protections. Because, again, the standard for the Fourth Amendment is all intrusions into private property without a warrant is per se unreasonable, unless you fit into an exception. And that's the bottom line. And my argument standing here, and I have not much time left, would say there is no exception that is applicable. Unless there's any other questions, I thank you for your time today. Thanks to both of you for your helpful briefs and arguments. Appreciate it. The case will be submitted, and the clerk may call the last case.